(99 App. Div. 225)

## McLAUGHLIN v. HAMMERSTEIN.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. THEATRICAL CONTRACTS—TERMINATION.

Where plaintiff contracted to perform a particular "Comedy Act," known as "Marcoe Twins," at defendant's theater, which defendant had previously seen plaintiff perform, and the performance as presented under the contract was materially different from that previously given, by which the comedy was known, and with respect to which defendant contracted, defendant was entitled to terminate the contract.

Patterson and Hatch, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by James McLaughlin against Oscar Hammerstein. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Nathaniel Cohen, for appellant.
Edward Hymes, for respondent.

LAUGHLIN, J. The plaintiff is a vaudeville performer, and the defendant is a theatrical manager. The defendant engaged the plaintiff to produce his specialty known as "Comedy Act" or "Marcoe Twins" at the Victoria Theater for a period of eight weeks at a salary of $225 per week. The performance of the contract for the first week was waived by consent. The plaintiff and another appeared in the act at the Victoria during the second week, at the expiration of which they were discharged on the ground that the act as given by them was an incompetent performance. The action was for a wrongful discharge, and the plaintiff has recovered the difference between the contract price for the remaining six weeks and his earnings in performing at other theaters in the meantime.

The contract was negotiated through a theatrical agency while the plaintiff was in Europe. It was prepared in duplicate, one of which was signed by the defendant. The two were then forwarded to the plaintiff, who erased from each a clause to the effect that the defendant reserved the right to cancel the contract at will "during or after a single performance of an incompetent person," or "in the event of a performer becoming careless or indifferent about his work." The plaintiff then retained the duplicate signed by the defendant, and signed and mailed the other to the theatrical agency, inclosing with it a letter asking to be immediately notified whether the defendant consented to the change, and saying, in substance, that otherwise he would not enter into the contract. The matter was not further brought to the attention of the defendant by the theatrical agent. The plaintiff, receiving no cablegram, assumed that the change was satisfactory to the defendant, and came to New York and entered upon the performance of the contract, as already stated.

The defendant set up as a defense, among other things, that the performance was incompetent. The evidence tending to support this allegation was given by the defendant and his son, who was associated in business with him as manager. The contract gave no description of the performance to be presented by the plaintiff, other than the designation of the act as already stated. The plaintiff had for many years been presenting his specialty known by these names, and some six or seven years before this contract was negotiated he had presented the act at Koster & Bial's Theater, in the ownership or management of which the defendant was interested. The defendant and his son had seen the performance as there given, which was by the plaintiff and a very small dwarf, named "Ulps." The defendant contends that at the time the contract was made he was informed by the theatrical agent, and that the plaintiff afterwards admitted, that Ulps was still performing with him; that it was the understanding and intention of the parties that the act should be performed by the plaintiff and Ulps; and furthermore that it should be the same act, in all material respects, as that theretofore presented by them, which was known to the defendant. Ulps did not take part in the performance of the act as presented by the plaintiff at the Victoria Theater. Whether or not the defendant was entitled to have Ulps appear with the plaintiff

was submitted as a question of fact to the jury, and they found adversely to him.

The defendant further contended upon the trial that, aside from the personnel of the performers, the act was not similar in all respects to that previously given, and upon which he relied in making the contract. The son testified that after the second performance he complained to the plaintiff that it was not the same as that previously presented, and that defendant had been deceived in that regard; that the plaintiff stated that he could not do the same act with the dwarf he then had as with Ulps. Defendant permitted the plaintiff to play through that week, but refused to allow him to continue during the remaining six weeks, either with the midget who performed with him the first two nights at the Victoria and another—as he sometimes performed the act with two—or to substitute another, as the plaintiff requested.

The testimony of the defendant and his son is to the effect that the performance as given by the plaintiff at the Victoria Theater was materially different from that previously given by the plaintiff and Ulps, with the knowledge of which the defendant contracted. Their testimony gives in detail the difference between the performance given by the plaintiff at the Victoria Theater and that previously given at Koster & Bial's, and is to the effect that the principal difference was that in the latter theater a small, attractive dwarf appeared on the stage with the plaintiff, and they together performed funny acrobatic feats, including a burlesque wrestling or boxing match, closing with the plaintiff tossing the midget upon a tree; that on account of the fact that the dwarf who took part in the performance at the Victoria Theater was "heavier," and crippled or "ill-shaped," the act as given by them was a weak imitation of the former act, and, instead of being funny, was disgusting or vulgar, and was so characterized by the press. The plaintiff did not contend that the performance at the Victoria Theater was the same as that previously presented with Ulps, but he testified in substance that it was similar, differing merely as necessitated by the change of performers. He signed the contract, "Marcoe Twins," and testified that this was his trade-mark. He further testified that during eight years he had had six little men performing the act, which he characterized as grotesque, with him; that the principal feature of the act is the dissimilarity between himself and the other performer, he being tall, or, as he puts it, "the ridiculous juxtaposition of the opposites," and he denied that his companion performer was a cripple.

The court left it to the jury to determine whether the contract embraced the clause which the plaintiff struck therefrom, or whether the minds of the parties met thereon with that clause eliminated, and charged that, if the defendant did not assent to this modification made by the plaintiff, then he had the right to cancel the contract if any performer appearing in the act proved to be incompetent or became careless or indifferent about his work during the engagement. The jury were further instructed that if the clause reserving the right to discharge was not in the contract, as finally

90 N.Y.S.—60

agreed thereon, then the defendant would have no right to discharge performers. The learned court further instructed the jury that, if the minds of the parties did not meet upon the question of retaining or eliminating this clause, then there was no contract, and the plaintiff could not recover; and also that, if the clause became a part of the contract, it was incumbent on the plaintiff to show that he performed all his obligations under the contract, even though there was "no incompetency." The learned court then drew the attention of the jury to the defendant's claim that the personnel of the actors was not that contemplated by the contract, and stated that they were to determine what was meant by the "Comedy Act called 'Marcoe Twins.'" The court then alluded to testimony given in behalf of the defendant tending to show that his understanding with the theatrical agent prior to making the formal contract was that the plaintiff was to be assisted in the act by Ulps, and submitted that question to the jury, as one of fact. The jury were then instructed that if the plaintiff agreed to produce a particular combination—evidently referring to the personnel of the actors—and did not, this would be a violation of the contract, and he could not recover. At the close of the charge the court, at the request of counsel for the plaintiff, instructed the jury "that of the jury find that William Hammerstein did not make the appearance of Ulps with the plaintiff a condition of the contract, the verdict must be for plaintiff," and declined to charge at the request of counsel for defendant "that, if the plaintiff gave an incompetent performance, the defendant was at liberty to terminate the agreement without any notice whatever, and was not compelled to permit him to perform for the entire period mentioned in the contract." Counsel for the defendant thereupon excepted to the refusal to charge as requested, and to the charge as made upon that subject. We are of opinion that the jury would naturally infer from the charge that even if the performance was, as testified by the defendant and his son, materially different from that previously given by the plaintiff and from what was known and understood as his "Comedy Act," still the plaintiff was entitled to recover if the clause reserving the right to discharge was not a binding part of the contract, and if it was not agreed that Ulps was to take part in the performance. As already observed, the court did, in general terms, instruct the jury that plaintiff was, in any event, bound to show a performance of his contract; but by the further general instructions that there was no right to discharge unless it was expressly reserved, and the pointed instructions given at the close of the charge that the plaintiff was entitled to recover unless it was agreed that Ulps was to be one of the performers, and by the refusal to charge the request made by counsel for the defendant, the jury would very likely receive the impression that, regardless of the personnel of the performers, the contract did not obligate the plaintiff to perform the "Comedy Act" substantially as it has been previously known and rendered. Even though the plaintiff was entitled to the benefit of the contract as if it did not contain the clause reserving the right of cancellation, and even though there

was no agreement that Ulps was to be one of the performers, still the defendant would have the right to terminate the contract if the plaintiff presented a performance materially different from that previously given by which his comedy act was known, and with respect to which the defendant contracted, and the evidence of the defendant and his son would have justified a finding that such was the fact.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concur. PATTERSON and HATCH, JJ., dissent.